# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

JOHN THOMAS SCOTT, #71995                                          PETITIONER

v.                                                              No. 3:07CV101-P-A

CHRISTOPHER EPPS, ET AL.                                          RESPONDENTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of John Thomas Scott for a writ of *habeas corpus* under 28 U.S.C. § 2254. The state has answered, and the matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* shall be denied.

## Facts and Procedural Posture

John Thomas Scott is in the custody of the Mississippi Department of Corrections and currently housed at the Mississippi State Penitentiary in Parchman. He was convicted of two counts of murder (Counts I and II) and possession of a handgun by a felon (Count III) in the Circuit Court of Pontotoc County, Mississippi. State Court Record, hereinafter S.C.R., Vol. 2, pp. 212-214. Scott was sentenced as a habitual offender to serve a term of life on Count I, life on Count II, and three years on Count III. S.C.R., Vol. 2, pp. 215-217. Each sentence runs consecutively with the others. *Id.*

Scott appealed his convictions and sentences to the Mississippi Supreme Court, citing as error (as stated by Scott through counsel):

   I.  Under *Edwards v. Arizona*, was Scott's confession properly admitted at
       trial when he clearly requested an attorney and no attorney was ever
       provided?

   II. Was Scott's confession voluntary and obtained with his "full knowledge"
       of the consequences when he had been awake for six days, and had been
       ingesting large amounts of narcotics in the week prior to his arrest?

> III. Was Scott's confession made under coercion, compulsion and duress when he made the statement face down in the mud, a gun pointed at his head, and he believed his family was being held captive in exchange for his arrest and confession?
>
> IV. Should the gun have been properly admitted into evidence when its location was discovered during Scott's illegally obtained confession, it was located at the bottom of a pond, and the police were unlikely to find the gun without Scott's confession?

After reviewing these grounds on the merits, the Mississippi Court of Appeals affirmed the convictions and sentences. *Scott v. State*, 947 So.2d 341, *reh'g. denied* January 16, 2007 (Miss. App. 2006) (Cause No. 2005-KA-00745-COA). Scott then sought a petition for writ of *certiorari* to the Mississippi Supreme Court, which denied the petition April 26, 2007. *Scott v. State*, 356 So.2d 228 (Table) (Miss. 2007).

Scott filed a petition for post-conviction collateral relief in the Mississippi Supreme Court, citing as grounds for relief (as stated by Scott, *pro se*):

> 1. Ineffective assistance of counsel in failing to seek a change of venue.
>
> 2. Ineffective assistance of counsel in not requesting from the trial court instructions to the jury concerning Scott being presented before the jury in handcuffs and shackles.
>
> 3. Ineffective assistance of trial counsel in failing to object to the improper closing argument of the State.

The Mississippi Supreme Court denied relief, holding that "the issues set forth by Scott regarding ineffective assistance of counsel fail to overcome the burden established in *Strickland v. Washington*, 466 U.S. 668 (1984). Further, the panel finds that Scott fails to make a substantial showing of the denial of a state or federal right as required by MISS. CODE ANN. § 99-39-27(5) and that the application should be denied."

Scott then filed the instant federal petition for a writ of *habeas corpus* in this court, citing as error (as stated by Scott *pro se*):

Ground One: Scott's right to due process was violated when his request for an attorney was ignored during his arrest for the crimes he is now convicted of.

Ground Two: Scott's confession to the Pontotoc County Sheriff's Department was not made voluntarily.

Ground Three: Scott's confession was made under coercion compulsion and duress.

Ground Four: Evidence admitted at trial was "fruits of the poisonous tree" and should have been excluded.

Ground Five: Scott was denied effective assistance of counsel before and during trial.

Ground Six: Ineffective assistance of trial counsel in failing to seek a change of venue.

Ground Seven: Ineffective assistance of trial counsel in failing to object to the improper closing arguments of the State.

Ground Eight: Denial of fundamental due-process of law in violation of 5th and 14th Amendment to the United States Constitution by the cumulative effect of the herein presented claims.

**Grounds One, Two, Three, Five, Six, and Seven:
Reviewed on the Merits in State Court**

The Mississippi Supreme Court has already considered Grounds One, Two, Three, Five, Six, and Seven on the merits and decided those issues against the petitioner; hence, these claims are barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to Grounds One, Two, Three, Five, Six, and Seven of the petitioner's claim.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if the facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; therefore, Scott cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided by the state courts on the merits.

### Ground One: Request for an Attorney

In Ground One, Scott alleges that the state violated his right to due process when "his request for an attorney was ignored during his arrest." At the suppression hearing, Sheriff Mask testified that, after he was apprehended, Scott stated "I probably need to talk to a lawyer." S.C.R., Vol. 3, pg. 5. The Mississippi Court of Appeals considered this declarative statement constituted a request for counsel, holding:

> All of the versions of the request are clear that the request was made during the time of or immediately before arrest. There is nothing in the record to indicate that Scott made the request for counsel during an interrogation. A request for counsel is not "triggered" unless made during an "interrogation." Charles H. Whitebread & Christopher Slobogin, Criminal Procedure § 16.03 (3d ed. 1993). The authors rely for this conclusion on *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In *Edwards*, the Supreme Court held that once an accused has requested counsel during the interrogation process, that the accused may not be questioned further until the attorney is present, unless the accused voluntarily begins to talk again. *Id.* at 484-85, 101 S.Ct. 1880.
>
> The somewhat varied accounts in our case agree that the only reference to an attorney was the statement of "probable" need while the sheriff was engaged in his first encounter in the woods with Scott. The language is surprisingly like that used by a United States Navy sailor when he was being questioned about a murder. He said, "Maybe I should talk to a lawyer." *Davis v. United States*, 512 U.S. 452, 454, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). The agent questioning him then asked whether he wanted to stop and talk to a lawyer, and the answer

> was that he did not. *Id*. The Supreme Court declared that the *Edwards* rule requiring questioning to stop until a lawyer is located or the accused reinitiates the conversation, does not apply when the "suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect ***might*** be invoking the right to counsel,...." *Id.* at 459, 114 S.Ct. 2350. We find the circumstance here, with Scott in the woods just after being caught by the sheriff, to make the statement more of an indication that Scott understood that he was in considerable trouble but not to be an actual request for counsel. Scott's actions immediately thereafter in talking at considerable length to the sheriff indicated this was the proper interpretation of Scott's comment.
>
> The *Edwards* "bright line rule" prevents overriding a suspect's unequivocal request for counsel by badgering or lesser forms of persistence whereby the police encourage waiver of a right already invoked. "To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry." *Id.* at 458-59. 114 S.Ct. 2350. Objectively viewed, Scott's statement that he would "probably need to talk to a lawyer" was ambiguous and easily seen as simply an admission that he was in substantial legal difficulty. The request did not occur during interrogation and therefore could not have crossed the *Edwards* bright line anyway.

*Scott v. State*, 947 So.2d at 343-344.

The state court's reasoning is sound, especially considering Scott's multiple confessions to various law enforcement officers over the course of two days – and that Scott never again mentioned a need for counsel. The state court's decision was therefore neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Neither was the decision based upon an unreasonable determination of the facts in light of the evidence. Scott's request for relief Ground One shall therefore be denied.

**Ground Two: Involuntary Confession**

In Ground Two, Scott argues that his confession at the Pontotoc County Sheriff's Department was not voluntary. According to Scott, he had been abusing methamphetamines and had not slept in the six days prior to his arrest. However, at trial, several law enforcement

-6-

officers testified that Scott appeared to be lucid during his arrest and following statements. Deputy Rossell, the investigator who took Scott's second statement at the Sheriff's Department, testified that Scott appeared to be "nervous and a little scared" but was otherwise clearheaded, and did not appear to be "drunk or anything when he gave the statement." S.C.R., Vol. 4, pg. 208-209. On cross-examination, Rossell stated that Scott "never indicated to me he missed sleep or [was] on any type of drugs or alcohol." S.C.R., Vol. 4, pg. 217. Further, Deputy Van Gorder, the jailer who booked Scott shortly after his statement to Rossell, testified that, although Scott informed him that he had used methamphetamine earlier that day, S.C.R., Vol. 4, pg. 226, Van Gorder was unable to see the effects despite his experience with individuals under the influence of narcotics, S.C.R., Vol. 4, pg. 231. Likewise, Scott was able to tell Van Gorder that he had thrown the murder weapon in a pond "in a small cove next to a small beaver dam and on the opposite side of the homes." S.C.R., Vol. 4, pg. 227. This detailed description of the area where Scott discarded the murder weapon weighs against a finding that Scott was so incapacitated by drugs that his confession was involuntary.

In addition, Sheriff Mask and Deputy McGowan, who arrested Scott prior to his statement to Rossell,:

> characterized Scott as being generally cooperative during the arrest. The sheriff said that Scott did not appear to be under the influence of alcohol, but that he could not really tell if he was under the influence of drugs. Scott told Sheriff Mask that he had been using methamphetamine. Deputy McGowan stated that he did not believe Scott to be under the influence of drugs or alcohol.

*Scott*, 947 So. 2d at 344. The Mississippi Court of Appeals went on to note the high degree of planning and covering up the crime:

> All law enforcement personnel who testified stated that Scott did not appear to be under the influence of drugs. There was no corroboration of Scott's assertions to the contrary.

> In addition, Scott's actions on the day of the murders also indicated a mind
> capable of perceiving the world around him and taking control of his own actions.
> Scott testified that he had driven to meet Coleman. After Scott admitted that he
> shot the victims, he testified that he wiped his fingerprints off of the car door. He
> also wiped fingerprints from the murder weapon and tossed it in a nearby lake.
> He avoided returning to his vehicle, opting instead to flee in another direction. He
> went to an area near the lake to assist his fiancee, as he feared his fiancee was in
> some sort of danger. At that time, he recognized a resident of the area and
> identified himself. Scott also recognized the resident as the owner of a store.
> Scott also said he recognized Sheriff Mask once he arrived. Scott then gave a
> vivid recounting of the very precise conversation he alleges to have had with
> Sheriff Mask from the woods. These behaviors support that Scott's confession
> was with "full knowledge" of the consequences of making it.

At the hearing on the motion to suppress, the trial court found that Scott was not "under the influence to any extent that he could not waive his constitutional rights." The evidence of record certainly supports that conclusion. *Id.* at 345.

"[W]hile the ultimate issue of voluntariness is a legal question requiring independent factual determination, subsidiary factual questions . . . are entitled to the § 2254(d) presumption." *Gachot v. Stalder,* 298 F.3d 414, 418 (5th Cir. 2002). "With regard to questions of fact, § 2254(e)(1) requires federal courts to presume that the factual findings of the state courts are correct unless the petitioner 'rebut[s] the presumption of correctness by clear and convincing evidence.'" *Hopkins v. Cockrell,* 325 F.3d 579, 583 (5th Cir. 2003). Scott has not presented argument or evidence in his federal *habeas corpus* petition to overcome the presumption of correctness afforded the state court's findings that his confession was voluntary. As such, the Mississippi Court of Appeal's decision was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Neither was the decision based upon an unreasonable determination of the facts in light of the evidence. Scott's claim for *habeas corpus* relief in Ground Two shall therefore be dismissed.

## Ground Three: Coerced Confession

In Ground Three, Scott alleges that his initial confession to Sheriff Mask was the result of coercion, compulsion, and duress. Scott argues that this initial confession was made while he lay face down in the mud with a rifle aimed at his head. He also claims that he confessed in part because he heard a woman and child whom he believed to be his fiancee and her baby, and he feared for their lives. A state court's factual assertions used to determine the voluntariness of a confession are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). *Gachot v. Stalder,* 298 F.3d 414, 418 (5th Cir. 2002). Scott must "rebut the presumption of correctness by clear and convincing evidence." *Hopkins v. Cockrell,* 325 F.3d 579, 583 (5th Cir. 2003).

At the suppression hearing, both Sheriff Mask and Chief Deputy McGowan testified extensively regarding Scott's initial confession in the woods. Sheriff Mask stated that, while he and McGowan were still at the crime scene, they received a call that an individual was in the woods behind a nearby home. S.C.R., Vol. 3, pg. 4. The officers then responded and, seeing the unknown individual in the woods, ordered him to put his hands up and get on the ground. S.C.R., Vol. 3, pg. 4. Mask then asked the suspect his name and discovered that the man was Scott. S.C.R., Vol. 3, pg. 4-5. Mask asked Scott what he was doing in the woods, and Scott said, "You know what I'm doing." S.C.R., Vol. 3, pg. 5. Mask then informed Scott of his *Miranda* rights, and Scott asked about his fiancee and her baby. S.C.R., Vol. 3, pg. 5. Shortly thereafter, Scott told Mask that "he had to get them before they got him," referring to Coleman. S.C.R., Vol. 3, pg. 7. Scott also informed Mask that the female victim was simply with Coleman. S.C.R., Vol. 3, pg. 7. Mask also testified that he did not threaten Scott into making his statement, but simply held the gun on him because he had not yet ascertained whether Scott was armed. S.C.R., Vol. 3, pg. 13. McGowan corroborated Mask's testimony and noted that the

homeowners, who were also present at the scene, did not threaten Scott in any way. S.C.R., Vol. 3, pg. 81. McGowan also testified that neither he nor the Sheriff threatened Scott. S.C.R., Vol. 3, pg. 83-84. In addition, *after Scott had been taken to the Sheriff's office and no longer had a gun pointed at him*, Scott continued to confess to both Deputies Rossell and Van Gorder. Indeed, the next day, Scott accompanied the officers to the pond and directed them to the spot where he had attempted to discard the murder weapon.

> The Mississippi Court of Appeals considered Scott's claims on direct appeal and held:
>
> The only evidence that the confession was the result of any kind of duress was given by Scott himself. Scott testified that Sheriff Mask "cocked the gun and told me if I didn't tell him where I [threw] that pistol, that he was going to shoot me in the back of the head like I did them people." In his brief, Scott argued that he confessed to Sheriff Mask while he was "face down in mud with the Sheriff's rifle pointed at his head." He believed that scenario "would put fear and intimidation into the hearts of any person, as was the officer's intent." The only individuals present other than Scott when this alleged intimidation occurred testified and did not support the claim.
>
> Based on the evidence presented, the trial court was justified in rejected Scott's arguments that his admissions regarding the shootings were coerced.

*Scott*, 947 So.2d at 346.

Scott presents no evidence or argument in the instant petition to overcome the presumption of correctness afforded the state court's findings that his confession was valid. As such, the Mississippi Court of Appeal's decision was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Additionally, this decision was not based on an unreasonable determination of the facts in light of the evidence. Therefore, Scott's request for *habeas corpus* relief in Ground Three shall be denied.

## Grounds Five, Six, and Seven: Ineffective Assistance of Counsel

In Grounds Five, Six and Seven, Scott raises several allegations of ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, Scott must prove that counsel was both constitutionally deficient in his performance – and that Scott suffered actual prejudice as a result of the deficient performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review).

Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir.), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). There is a strong presumption that counsel has exercised reasonable professional judgment. *Strickland*, 466 U.S. at 689; *Martin v. McCotter*, 796 F.2d 813, 187 (5th Cir. 1986).

## Ground Five: Failure to Challenge the Sufficiency of the Evidence

In Ground Five, Scott alleges that trial counsel was ineffective for failing to preserve the claim that the evidence at trial was insufficient to support the verdict. According to Scott, "had

[this] issue been raised the trial court[,] the judgment would undoubt[ed]ly have been rendered differently." ecf doc. 2, pg. 15. This is simply untrue, as counsel challenged the sufficiency of the evidence *three times*. First, counsel moved for a directed verdict at the close of the State's case-in-chief. S.C.R., Vol. 6, pg. 478. This motion was then denied, at which point counsel presented the defense's case-in-chief and – requested a directed verdict a second time. S.C.R., Vol. 6, pg. 551. The motion was again denied. Counsel then filed a motion for judgment notwithstanding the verdict ("JNOV"), S.C.R., Vol. 6, pg. 223, which was denied, S.C.R., Vol. 6, pg. 226. As counsel challenged the sufficiency of the evidence three times during trial, he preserved that claim for appeal. This issue is not supported in the record.

Appellate counsel's decision not to raise this issue on direct appeal constitutes *effective* representation. In reviewing the performance of appellate counsel, the two-pronged test of *Strickland* applies. *Evitts v. Lucey*, 469 U.S. 387, 397-399 (1985). Appellate counsel does not have a duty to raise every "colorable" claim on appeal, as counsel has broad discretion in determining which issues are more likely to be successful. *Jones v. Barnes*, 463 U.S. 745, 751-754 (1985). The evidence against Scott was overwhelming. As such, counsel's decision not to argue the sufficiency of the evidence on appeal was reasonable.

### Ground Six: Failure to Seek a Change of Venue

In Ground Six, Scott argues that trial counsel was ineffective in deciding not to petition the court for a change of venue. He claims that his case had received a large amount of media attention in Pontotoc County, and that this attention poisoned the jury pool. Scott also complains that several of the potential jurors revealed that they had family members who were involved in law enforcement in Mississippi, and argues that this caused him prejudice which a change of venue could have cured.

During voir dire, the jury was asked whether they had heard anything about this case in the media. S.C.R., Vol. 3, pg. 117. Of those jurors who responded affirmatively to this question, only one was actually chosen to sit on the jury, as reflected by the final jury list. S.C.R., Vol. 4, pg. 186. That juror, Charlotte Bass, indicated that she had seen a television news report regarding this case; however, she also indicated that she could put that aside and "decide the case based solely on the evidence presented here in open court." S.C.R., Vol. 3, pg. 119. Thereafter, defense counsel asked the venire whether they had close relatives who were involved in law enforcement. S.C.R., Vol. 3, pg. 145. In response, juror Marty O. Davis revealed that his brother-in-law was an investigator for the Union County Sheriff's Office; however, he also indicated that this fact would not cause him to tend to believe the testimony of law enforcement officers more than other witnesses. S.C.R., Vol. 3, pg. 147. In addition, juror Beverly Willard stated that her first cousin worked for the driver's license bureau, but also noted that this fact would not influence her as a juror. S.C.R., Vol. 3, pp. 149-150. Also, juror Cheryl Davis indicated that she had two uncles and two cousins in the Memphis Police Department; however, she also stated that this would not influence her. S.C.R., Vol. 3, pg. 150. Further, juror Bonnie Litton stated that she went to church with Deputy Kevin Rogers, a state witness, and also worked with his wife; although she also affirmed that this fact would not "cause her embarrassment or anything of that nature" if she found Scott to be innocent. S.C.R., Vol. 4, pp. 164-165.

Under Mississippi law, the decision of whether to grant a change of venue is within the discretion of the trial judge and will only be overturned on appeal if the trial court abused that discretion. *Simon v. State*, 688 So.2d 791, 804 (Miss. 1997). The jurors in question stated on the record that they could be impartial, and their ties to the case were tenuous. As such, the court was within its discretion in permitting them to sit on the jury, and counsel's performance cannot

be considered deficient for failing to request a change of venue.

### Ground Seven: Failure to Object During State's Closing Arguments

In Ground Seven, Scott complains that trial counsel did not object to the State's closing argument on the grounds that the prosecutor referred to Scott as a "liar."[1] Scott takes issue with several of the prosecutor's statements. First, the State said the following:

> And like I told you in opening statement, there are two stories. There [are] two stories. That's why we are here today. Which one is reasonable? Who has the benefit to lie and to change the story, if need be? The defendant.
>
> . . .
>
> One person is going to benefit from those lies, and that's the man right there. It's plain and simple.

S.C.R., Vol. 6, pg. 559. Later, the prosecution made the following statement, "And Dr. Hayne's testimony further points out – I'm sorry, but there is no other way to say it other than to be blunt – that John Thomas Scott is lying." S.C.R., Vol. 6, pg. 574. As these statements were based upon conflicting evidence, they were proper. In addition, any possible prejudice from these statements was diffused by the trial court's instruction to the jury: "Arguments, statements and remarks of counsel are intended to help you understand the evidence and apply the law, but are not evidence. Any argument, statement or remark having no basis in the evidence should be disregarded by you." S.C.R., Vol. 2, pg. 180. Trial counsel's decision not to object to these statements was therefore reasonable, and counsel's performance was constitutionally adequate. *Clark v. Collins*, 19 F. 3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite.").

---

[1] Scott did not elaborate on this claim in his "Brief in Support of Petition for Writ of Habeas Corpus," ecf doc. 2. The court has therefore looked to Scott's state application for post-conviction relief for his supporting argument.

Thus, the Mississippi Supreme Court's denial of relief in Grounds Five, Six, and Seven based upon a theory of ineffective assistance of counsel was neither contrary to nor an unreasonably application of clearly established federal law. As such, Scott's requests for relief in these grounds shall be denied.

**Ground Four: Murder Weapon as "Fruit of the Poisonous Tree"**

In Ground Four, Scott argues that the gun used to murder the victims should have been excluded at trial as "fruit of the poisonous tree" because it would not have been recovered but for Scott's allegedly invalid confessions. "[W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal *habeas corpus* relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial . . . ." *Stone v. Powell*, 428 U.S. 465, 486 (1976). The petitioner bears the burden of proving the denial of a full and fair hearing. *Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986). In this case, John Thomas Scott had a full and fair hearing on the voluntariness of his confessions on July 26, 2004. S.C.R., Vol. 3, pp. 2-88.

The Mississippi Court of Appeals considered the issue of the admission of the gun as fruit of the poisonous tree on direct appeal, holding:

> Scott believes the murder weapon should not have been admitted into evidence because his confession that revealed the location of the weapon was "illegally obtained." We have already rejected the assertions of involuntariness.[2] Therefore, the tree from which this evidence was obtained was in no way poisoned.

*Scott*, 947 So.2d at 346. The Mississippi Court of Appeals thus rejected Scott's "fruit of the poisonous tree" argument. Scott has not shown that the state courts failed to give him a full and

---

[2] The Mississippi Court of Appeals decision on the merits regarding the voluntariness of Scott's multiple confessions is discussed above.

-15-

fair hearing on the matter. *Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978) (holding that consideration on the merits by a state appellate court will suffice to raise the *Stone* bar for *habeas corpus* review of a Fourth Amendment claim.). John Thomas Scott litigated his Fourth Amendment claim both at trial and on direct appeal. As such, Scott's claim in Ground Four that the murder weapon should not have been introduced into evidence is barred from *habeas corpus* review under *Stone v. Powell*, 428 U.S. 465, 486 (1976).

### Ground Eight: Cumulative Error

Scott has not presented his claim Ground Eight of the instant petition to the Mississippi Supreme Court. As such, this claim is barred from federal *habeas corpus* review and shall be dismissed with prejudice. *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728 (1999) (citing *Coleman v. Thompson,* 501 U.S. 722, 731-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). When "it is obvious that the unexhausted claim would be procedurally barred in state court, we will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from *habeas* review." *Sones v. Hargett*, 61 F.3d 410 (5th Cir. 1995)(quoting *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993)). "If a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claims procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). By failing to raise the facts of this ground on appeal or pursuant to a motion for post-conviction relief, Scott waived having the Mississippi appellate courts review the claims on the merits. He has thus defaulted the cumulative error claim in Ground Eight, and this court may not review it.

As no external impediment prevented Scott from raising and discussing the claim in state court, he has not shown cause under the "cause and prejudice" test to enable this court to reach

the merits of his claim. *United States v. Flores*, 981 F.2d 231 (5th Cir. 1993). Scott has not shown cause for his default; thus, the court need not consider whether there he suffered prejudice from the court's decision not to review the merits of Ground Eight. *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996). Further, as Scott has not alleged in his *habeas corpus* petition that he did not actually commit the crimes of his conviction, the court's application of the procedural default will not result in a "fundamental miscarriage of justice." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)).

Finally, Scott's claims of error raised in the instant petition are without substantive merit, as discussed below. Thus, his claim of cumulative error in Ground Eight is likewise without merit. Cumulative error can sustain a claim for *habeas corpus* relief, but only when "(1) the individual errors involved matters of constitutional dimensions, rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (*citing Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992)). Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the number raised. *Derden*, 978 F.2d at 1461. Put simply, an accumulation of non-errors does not create an error. This issue is without merit and shall be dismissed.

In sum, none of Scott's claims have merit, and the instant petition for a writ of *habeas corpus* shall be denied. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 6th day of November, 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE